CLARENCE F. FISHER, EXECUTOR, APPELLEE, V. STANDARD INVESTMENT COMPANY, APPELLEE: MARTIN FISHER ET AL., APPELLANTS, HOWARD FISHER ET AL., INTERVENERS, APPELLEES.

15 N. W. 2d 355

FILED JULY 21, 1944. No. 31734.

*O. A. Drake*, for appellants.

*Dryden & Jensen* and *C. J. Mingus, contra*.

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

In this action the grantee in a deed was named as the "Estate" of a person known to be deceased. The executor brings this action to reform the deed and to quiet title in him as executor. The trial court so decreed. We affirm the judgment of the trial court.

For some time prior to 1928, Martin Fisher was the owner and in possession of a quarter section of land in Buffalo county. It was the homestead of himself and his wife, Jessie. On February 28, 1928, he and his wife executed three promissory notes for $3,000 each, with interest coupons attached, payable to James H. Fisher. To secure the payment of the same, they executed and delivered a real estate mortgage on the land; James H. Fisher died, and the notes and mortgage came into the possession of this plaintiff as executor.

On January 27, 1936, no part of the principal debt had been paid, although long past due, and there was unpaid and delinquent interest due in the sum of approximately $2,500. On that date Martin and Jessie Fisher, as husband

and wife, executed and delivered a warranty deed to the executor, whereby, for the recited consideration of $10,750, they conveyed the land to "Estate of James H. Fisher" and the covenants also ran to "Estate of James H. Fisher." The conveyance showed the customary notarial acknowledgment. It was recorded April 6, 1936. The executor thereupon surrendered to Martin Fisher the notes, marked "paid by execution of deed SE¼-7-11-13," and the mortgage endorsed "paid by execution of deed to said premises this Jan 27, 1936 Clarence F. Fisher Executor Estate of James H. Fisher." Martin Fisher retained possession of the notes and mortgage, so endorsed, until the trial of this case when he tendered them to the plaintiff. Bearing the same date, there was a receipt issued bearing the signatures of the defendants Fisher, acknowledging receipt of the notes and mortgage from "Clarence F. Fisher, Executor of the Estate of James H. Fisher," in which they expressed an intention by the deed to convey "absolutely" and reciting that it was given for the protection and benefit of "Clarence F. Fisher" executor, etc.

At the same time, January 27, 1936, there was executed a contract between the "Estate of James H. Fisher" by the executor, as party of the first part, and Martin Fisher, as party of the second part, whereby it was agreed that if Martin Fisher paid the sum of $10,750 to the "party of the first part" on or before February 1, 1938, the land would be reconveyed to him.

At the same time, January 27, 1936, "The Estate of James H. Fisher," by written instrument, leased the premises to Martin Fisher from the date of the lease until March 1, 1938, for a crop and cash rent. Thereafter, a subsequent lease was entered into for the period March 1, 1938, to February 28, 1939. Thereafter, another lease was entered into for the period March 1, 1939, to March 1, 1940.

Martin Fisher undertook later to raise the necessary money to repurchase the land but was unable to do so, tendered a lesser sum to plaintiff, and it was refused.

Martin Fisher paid rent in cash and in crops to the plain-

tiff. It further appears that in October, 1940, the Fishers were ousted from possession by court order, although the nature of the proceedings and the order do not appear in the record.

The defendant, Standard Investment Company, was a judgment creditor of Martin Fisher. It caused execution to be issued and levied upon the premises and sale was advertised when plaintiff brought this action.

Plaintiff brought this action alleging a mutual mistake in the naming of the grantee in the deed, seeking a reformation of the deed to show "Clarence F. Fisher, Executor of the Estate of James H. Fisher, Deceased" to be grantee therein, and to restrain the defendants from asserting any right or title in the premises and to quiet title in him as such executor, and for equitable relief. A temporary injunction was issued against the Standard Investment Company and the sheriff.

Defendants Fisher answered, asserting ownership of the premises and that it was their homestead. They alleged that plaintiff required Jessie Fisher to sign the deed, or otherwise they would be "put off" the farm by March 1, 1936, and were promised "free use" of the premises for two years if Mrs. Fisher would sign; that she signed only in the presence of the husband and did not acknowledge the signing before the notary as her voluntary act and deed; and that she knew of no other negotiations. Martin Fisher alleged inducements to sign the deed, which he asserted had not been performed, and denied acknowledgment of the deed before the notary. He alleged that the deed was a nullity because of the grantee designation; that he paid money to plaintiff under threats of eviction and had never voluntarily vacated the premises. He offered to return the notes and mortgage, and prayed that title be quieted in him.

Heirs and legatees under the will intervened and prayed that the deed be reformed, as plaintiff prayed, and that title be quieted in them, subject to the rights of plaintiff as executor. To these pleadings answers and replies were filed.

The matter was tried. The trial court found generally

for the plaintiff and against the defendants, and against the interveners in so far as their prayer was at variance with the prayer of plaintiff's petition. The court decreed a reformation of the deed as prayed and quieted title in the plaintiff as against the defendants and interveners.

The defendants Fisher gave notice of intention to appeal and are the appellants here. The defendant Standard Investment Company, sheriff and interveners have made no appearance here. The plaintiff is appellee. The issues here are those presented between plaintiff and defendants Fisher.

Defendants make nine assignments of error. The first two may be considered together. They are that the trial court erred by failing to adjudge the deed to be void when defendants proved that they did not acknowledge it to be their voluntary act and deed before a notary. The testimony of the defendants was that they signed the deed in the presence of Clarence Fisher only; that the notary was not present; that they did not acknowledge the deed before him; and that it was not their voluntary act. Plaintiff's testimony was that the deed was signed by both grantors in the presence of the notary and Clarence Fisher; that the notary asked if it was their voluntary act and deed; that Martin Fisher replied in the affirmative; that Mrs. Fisher asked if she had to say that; that the notary explained to Jessie Fisher that this was a homestead and that necessarily she must say that it was her voluntary act and deed; that the notary told Jessie Fisher not to sign unless it was her voluntary act and deed; that the notary said he would sign if it was; that her reply was not remembered, but she said something indicating an affirmance, and the notary raised his hand and she raised her hand; and that the notary then attached his signature and seal in the presence of both grantors. A direct conflict in the testimony is presented. The trial court decided it in favor of the plaintiff. With the exception of the notary, the evidence is from interested witnesses. Under such circumstances, the rule long followed is: "While the law requires this court, in determining an appeal in an equity action involving questions of

fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." *Johnson v. Erickson*, 110 Neb. 511, 194 N. W. 670. See *Dvorak v. Kucera*, 130 Neb. 341, 264 N. W. 737; *Fisher v. Keeler*, 142 Neb. 728, 7 N. W. 2d 659. We agree with the trial court in its findings of fact.

It is the rule that: "The certificate of an officer having authority to take acknowledgments can not be impeached by showing merely that such officer's duty was irregularly performed. * * * When the party executing a deed or mortgage knows that he is before an officer having authority to take acknowledgments, and intends to do whatever is necessary to make the instrument effective, the acknowledging officer's official certificate will be, in the absence of fraud, conclusive in favor of those who in good faith rely on it." *Council Bluffs Savings Bank v. Smith*, 59 Neb. 90, 80 N. W. 270.

In *Bode v. Jussen*, 93 Neb. 482, 140 N. W. 768, this court said: "To hold that mortgagors can deny the acknowledgment of a mortgage and thereby defeat it, upon their naked assertion that a formal question was not asked, would open the door to fraud and perjury and make recorded acknowledgments a snare and a delusion. No one could safely deal with land on the faith and truth of public records if such a rule were to obtain." The same rule would obviously apply to acknowledgments to deeds. We see no error in the assailed findings of the trial court.

The third assignment is that the trial court erred in failing to adjudge the deed void because it was executed under duress and coercion. This refers to the testimony of the defendants Fisher that the plaintiff told them that if they did not sign the deed, he would put them off the place "in the spring," as testified to by Martin Fisher, or by "March 1st," as testified to by Jessie Fisher, and for that reason they signed the deed. The plaintiff's testimony, supported

by the defendants, was that this mortgage had been a repeated subject of conversation between them. Plaintiff testified that he asked for the deed; that because of the delinquencies he told the defendants that the heirs were demanding a foreclosure; that he was going to foreclose if the deed was not given; and that the defendants said they would give him the deed rather than to be foreclosed. The factual dispute here, tested by the above rules, is resolved, as did the trial court, in plaintiff's favor. When so determined, there is obviously neither duress nor coercion shown to avoid the deed.

The fourth and fifth assignments are that the trial court erred in failing to hold the deed void because executed by Martin Fisher as a result of false representations, and because of a failure of consideration as to Martin Fisher. The evidence does not support either of the assignments.

Defendants' sixth and seventh assignments are that the trial court erred in reforming a deed made to a "nullity" and naming as grantee therein an executor, who does not have capacity to "own" land, and by reforming a deed to correct a mistake without any evidence that the agreement expressed in the reformed instrument was concurrently in the minds of the parties at the time of its execution. The conclusion is inescapable that the parties to this deed intended that the plaintiff, as executor, was the grantee. Their testimony all points in that direction. What they did at the time shows it. Their conduct thereafter shows that they so construed the deed, until about the time this litigation began. The plaintiff, as executor, was in possession of the notes and mortgage and charged with their collection. The negotiations leading up to the deed were with him as executor. The notes and mortgage were surrendered to defendants by him. The three leases of the land were negotiated with him and rent was paid to him as executor. The contract of resale was one which the executor was expected to perform, and one which the defendants undertook to have performed by him on the basis of a compromise of the agreed consideration. The receipt was giv-

en for his "protection and benefit." Mrs. Fisher denied signing the receipt. Mr. Fisher testified that he signed her name to it about a week later. The entire evidence negatives this testimony. There is nothing in the evidence indicating an intent on the part of any of the parties that the conveyance was to the estate, as distinguished from the executor.

The argument of the defendants is that the estate, as such, is not a person in being who could take title, and that the deed is a nullity, citing 8 R. C. L., sec. 27, p. 953; 84 Am. St. Rep. 239. Assuming, but not deciding, that to be true, it does not necessarily follow that the beneficial title did not pass to the plaintiff as executor, nor that the deed cannot be reformed so as to express the true intent of the parties. The rule that a conveyance, without a grantee capable of receiving the grant, is void does not apply to equitable rights growing out of such a conveyance. 18 C. J., sec. 36, p. 159; 26 C. J. S., sec. 13, p. 185; *Black v. Beagle,* 59 Wyo. 268, 286, 139 Pac. 2d 439, 140 Pac. 2d 594, 148 A. L. R. 243, and note page 257. See *City Bank of Portage v. Plank,* 141 Wis. 653, 124 N. W. 1000, and *McCollum v. Loveless,* 185 Ga. 748, 196 S. E. 430, 187 Ga. 262, 200 S. E. 115, where equitable relief was granted under somewhat similar circumstances. In the *City Bank of Portage* case, *supra,* the Wisconsin court referred to cases where deeds ran to a partnership. This court was confronted with such a situation in *Schlake v. Healey,* 108 Neb. 35, 187 N. W. 427. During the course of the opinion, this court said: "It is quite generally held by the authorities that, where the partnership name is a fictitious one, and does not contain either the full name or the surname of any of the partners, an equitable estate only passes to the firm, the legal title remaining in the grantor. Such a deed may be reformed in equity by inserting the names of the individual partners as grantees, and this, when done, vests the legal title in the partners."

Applying the reasoning of these cases and the rules to the instant case, we conclude that the deed in question,

when executed and delivered by the defendants, passed the full equitable title to the plaintiff as executor; that the court properly reformed the deed to show the intent of the parties; and that when so done, the legal title also vested in the plaintiff as such executor. The land then became an asset of the estate in his hands to be distributed and dealt with as estate property. 24 C. J., sec. 708, p. 201; 33 C. J. S., sec. 268, p. 1284; *Battey v. Battey,* 94 Neb. 729, 144 N. W. 786.

It necessarily follows that the trial court did not err in quieting the title in the plaintiff as executor and did not err in denying the defendants a writ of assistance for possession of the land; and that defendants' eighth and ninth assignments asserting error in that regard are without merit.

The judgment of the trial court is affirmed.

AFFIRMED.